Parker, C. J.,
delivered the opinion of the Court. Ezekiel Gowen having been the acknowledged owner of the land in dispute until January, 1810, when his deed to the plaintiff was executed, that deed conveyed his title to the plaintiff as against the grantor *122 and every other person, unless it was fraudulent at the time of its execution; in which case, it was void against creditors and subsequent purchasers.
The facts reported show that the deed was fraudulent; so that Leighton acquired a good title by the levy of his execution, to satisfy a judgment he had obtained against Gowen, the fraudulent grantor. By that levy the estate of Ricker was divested, and he could not afterwards acquire a title but under Leighton, the judgment creditor, or by a new deed from Gowen, made bond Jide, and for a valuable consideration.
The payment of the money within the year to Leighton, with a view to redeem the land, could not, of itself, make a title to Ricker; for the deed under which he held being fraudulent in its creation, any other creditor might have levied upon the land ; or any subsequent purchaser might have taken it.
Upon payment by Ricker, he was restored to the situation he was in before the levy ; that is, he held under a fraudulent deed from Gowen. But it was always in the power of Gowen to defeat him of his title, by conveying to any person for a valuable consideration, even if such person knew of the conveyance to Ricker. The promise of Leighton to give a release avails nothing, because it was not performed; and if it had been, the debt being paid before the year from the levy expired, the release would have passed no estate; but Ricker would have been in, of his former fraudulent estate, the * fraud being purged only as against Leighton. ■ When, therefore, Ricker entered into the premises, run the lines, and put up the fences, he had only a defeasible title under Gowen; and that might be defeated by a conveyance from Gowen to a purchaser for a valuable consideration.
The release made on the 17th of August, 1812, by Leighton to Goioen, merely removed an encumbrance, supposed to exist by virtue of the levy; but no such encumbrance, in fact, existed; for the money was paid long before by Ricker. This transaction shows, however, unless some reason for it exists unknown to us, that Leighton was willing to assist Gowen to cheat Ricker, who had before assisted him to cheat Leighton, and this in direct violation of the promise made by Leighton to Ricker. Whether this sort of retaliation be justifiable according to the scale of morals which these parties are governed by, we do not know; but it certainly has the appearance of fraud according to common notions.
Gowen, however, had the power to convey, and he did convey, to the defendants, for a valuable and adequate consideration ; and this conveyance passed the title to the defendants, if this deed of Gowen was valid and operative at the time. Here, again, is a transaction, in *123 which another party, viz., William, Ham, one of the grantees, participated ; and which looks like a fraudulent combination to cheat Ricker out of the land, or the money he had paid to Leighton. But we apprehend that this has no effect upon the question of legal title, which is all we have to settle in the present action. If Ricker can, by another action, compel Goiuen, or any of these persons, to refund the money, we shall not be sorry; although he is the author of his own misfortune, in having consented to become the instrument of fraud for one who appears not to have honor or honesty enough to refrain from defrauding the friend who assisted him to defraud others.
The knowledge of William Ham that Gowen was in possession, professing to have some title, may be * presumed from the evidence reported, although it is not expressly found by the jury. If this knowledge were important to the decision, there ought to be a new trial, to ascertain whether it existed or not. But it is clear that a subsequent purchaser of land, fraudulently conveyed, will hold, even if he knew of the former conveyance ; for that is absolutely void against creditors and subsequent bona fide purchasers, (a)
It has been supposed, in the argument for the plaintiff, that the knowledge of Ham would show that he was not a bond fide purchaser ; but we apprehend the term bona fide, as used in the law upon this subject, means only that the purchase shall be a real and not a feigned one ; otherwise the knowledge would not be held immaterial, as it is in all the books.
The only point which has occasioned doubt is, whether the deed from Gowen to Ham passed the land, as Ricker was then in possession. But he was not in as a disseisor of Gowen, but under him, and relying upon a fraudulent deed; and the possession of a fraudulent grantee would not, in our apprehension, render invalid a title from the fraudulent grantor to a subsequent purchaser. Otherwise it would be impossible for the purchaser to avail himself of a title which the law holds good. For if an action were brought by the grantor, in order to divest the grantee, that he might convey, he would be estopped by his deed, against which he could not allege fraud, in which he was the principal.
We are therefore of opinion that the verdict is right; and although we see no commendable conduct in any of the parties to this transaction, we are bound by the principles of law to render mdgment for the defendants.
*124 Thatcher, J.,
said the case seemed to him to present two distinct questions proper to be referred to the jury ; the latter of which he thought had not been clearly laid before them in the charge given to them at the trial.
The first question was on the validity of the deed * from Gowen to Ricker, executed on the 8th of January, 1810 ; which (as it was admitted that Leighton and Heath were bona fide creditors to Gowen, and their" levy regular in all its parts) was, he thought, clearly fraudulent as to them; and that the levy vested a good title in fee to the land, subject to be defeated only by a payment of the judgment, &c., within a year, by Gowen or his assignee.
The second question was, whether the transactions between Leighton) Gowen, and the Hams, relative to the claim and possession, which Ricker had acquired posterior to the levy of Leighton and Heath, and in themselves unconnected with the aforesaid deed, were not fraudulent as to Ricker’s right, whatever that was.
This subject the judge thought was not submitted distinctly enough in the charge to the jury. But the whole charge was confined to an inquiry whether the deed of the 8th of January was fraudulent or not; and, from the facts in the case, he was inclined to think that, although that deed was a fraud upon Leighton and Heath, and so void, yet Ricker might after that lawfully and honestly have acquired such an interest in the same land as the law would protect against conspiracy and fraud in others; and it became a question of importance to Ricker to have that fully inves* tigated.
The report states that, in December, 1810, eleven months after the execution of the fraudulent deed, Ricker paid, of his own money, to Leighton and Heath the amount of their judgment, with the costs and charges, and they engaged to give him a discharge of their levy. About the same time, the land was actually set off to him by Gowen, with whose knowledge the said payment was made, and under circumstances that a jury might find the Hams had full notice. In addition to this, Ricker then took possession of the land, fenced it, and kept open possession of it until the commencement of the present action. All which facts, being submitted to a jury, and found by them, he thought would warrant the conclusion that there was a fraud committed by Leighton, Gowen, and the Hams, * upon Ricker; and that the deeds from Leighton to Gowen, and from Gowen to Ham, were void; and consequently the right and possession of Ricker, what *125 ever they were, remained in him, and were sufficient to enable him to maintain trespass against the defendants, (a)

Per Curiam.

Judgment on the verdict.

 [Hill vs. The Bishop of Exeter, 2 Taunt. 69. — Doe vs. Manning, 9 East, 59. — Bothul vs. Martyn, 1 New. R. 332. — Huron vs. Wilsmore, 8 D. & E. 528. — Rodgers vs. Langham, 1 Sid. 133. — Ed.]

 [The true view of the case seems to be that Ricker, claiming under a voluntary deed from Gowen, the validity of which he could not dispute, by paying the full value of the land to Leighton in discharge of the execution levied upon the premises long before the second deed of Gowen to the Hams confirmed his own title j it being well settled that a voluntary conveyance may be made good by subsequent transactions.— Wood vs. Jackson, 8 Wend. 9.— Sterry vs. Arden, 1 Johns Ch. Cas. 27).—Eliason vs. Parr, 1 East, 95. — Rodgers vs. Langham, 1 Sid. 133. — By the payment of the amount in the execution the claim of Leighton and Heath was extinguished, and, besides, the release by them to Gowen, if it was of any consequence, enured to the ben efit of Ricker. — Ed.]