GEORGE FOX AND CHARLES COLEMAN *v.* ELISHA B. CLARK, JOHN DREW, WILLIAM H. WILLIS, ALFRED WILLIS, EDWARD WILLIS AND EUROTAS P. HASTINGS.

A deed made to defraud creditors is void, and does not, as against them, divest the fraudulent grantor of his title, before the property has been conveyed by the fraudulent grantee, for a valuable consideration, to a third person without notice of the fraud; when the deed becomes operative against creditors, for the purpose of protecting the innocent purchaser and vesting the title in him.

A mortgage given by a fraudulent grantor to a creditor, to secure the payment of a judgment, is good against the fraudulent grantee, and all claiming under him with notice of the fraud.

It is also good against a creditor of the fraudulent grantor, who has had the assignment set aside, but who had acquired no lien on the property for his debt prior to the mortgage.

THE bill in this case was filed December 13th, 1842, to foreclose a mortgage executed by the defendant Clark, to complainants, on the 20th day of August, 1839, and recorded on the 23d day of September following.   The mortgage was given to secure a judgment for $1,462.09, recovered June 20th, 1838, by complainants, against Clark and one Joseph McCrary, in the Circuit Court of the United States for the District of Michigan.

On July 11th, 1838, the defendants Willis recovered a judgment in the same Court, for $953.83, and costs, against Clark and McCrary, on which execution was issued on the 27th day of the same month, but nothing was collected thereon.   On June 9th, 1838, previous to the rendition of either of the above judgments, Clark assigned all his property to one Dallee, in trust for his creditors.   In October, 1840, the Willises filed a bill on the equity side of the Circuit Court, to set aside the assignment, which embraced the mortgaged premises, as fraudulent against cre-

ditors; and obtained a decree in March, 1842, declaring the assignment null and void, and appointing a receiver; who, on August 2d, 1842, sold the premises in question at public auction, when they were purchased by the Willises.

*S. Barstow and H. N. Walker*, for complainants, insisted that the assignment from Clark to Dallee was void, and not voidable merely, and had been so declared by a competent tribunal; and that the mortgage to complainants was therefore in all points good, the title then remaining in Clark, who was justly indebted to them. That the defendants Willis and Drew were affected with notice by the recording of it, at the time when they commenced their proceedings to set aside the assignment; and the deed from Drew was made subject to the title and interest of complainants under the mortgage.

*A. D. Fraser and A. Davidson*, for defendants Drew and Willis, contended that the assignment was merely voidable, and complainants, or any other creditors of Clark, could only take advantage of its being so, by proceeding to impeach it; that defendants, having proceeded to impeach it and obtained a decree setting it aside, and also a sale, and claiming under that sale, have obtained a perfect title to the premises, clear of complainants' mortgage.

THE CHANCELLOR. The deed from Clark to Dallee is conceded to be fraudulent as to creditors by all parties. Both complainants and the Willises are constrained to admit it, to make out a good title in themselves. Both claim a right to the mortgaged premises as creditors of Clark;— complainants by virtue of their mortgage, and the Willises under the receiver's deed. The controversy is one between creditors for the property of an insolvent debtor.

The statute declares every conveyance or assignment made with intent to hinder, delay, or defraud creditors, or other persons, of their lawful suits, damages, forfeitures, debts, or demands, as against the persons so hindered, delayed or defrauded, shall be *void*. *R. S.* 331, § 1, *Ch.* 3, *Tit.* 6, *Part* 2.

The fifth section of the same chapter is in these words : " The provisions of this title shall not be construed, in any manner, to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that he had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering *void* the title of such grantor."

Taking the two sections together, their meaning, it seems to me, is this. Every conveyance made to hinder, delay, or defraud creditors, as against such creditors, is wholly void ; or, in other words, as between the parties to such conveyance, and the creditors of such fraudulent grantor, (although it is otherwise as between the parties to the conveyance,) the title to the property conveyed remains in the grantor, until the property has been conveyed by the fraudulent grantee for a valuable consideration, to a third person, without notice of the fraud ; when the fraudulent conveyance, by the fifth section of the act, is made operative against creditors, for the purpose of protecting the innocent purchaser, and vesting the title in him.

The first section declares the conveyance or assignment void generally against creditors, and without any restriction or limitation whatever ;—not void as between the parties to it, but void against the creditors of the fraudulent grantor. The fifth section, however, is a limitation on the first section, and restricts its operation to the fraudulent grantee, and persons claiming under him with notice.

On the argument it was insisted on the part of complainants that the assignment to Dallee was *absolutely void,* as to Clark's creditors, and for the defendants that it was *voidable* only.   In support of the latter proposition, the opinion of the Vice Chancellor in *Henriques* v. *Hone* was referred to; 2 *Edw. R.* 120.   In that case the Vice Chancellor says, such deeds are voidable only as to creditors or purchasers who may think proper to impeach them; and are not utterly void.   Thus, as against a fraudulent grantor, the conveyance is effectual to pass the title, and he and his representatives are not at liberty to set up a claim in opposition to the deed; *Osborn* v. *Moss,* 7 *J. R.* 161: and, for all the purposes of a valid title in a *bona fide* purchaser under a fraudulent grantee, such grantee is, in contemplation of law, vested with a legal and perfect title.''   If, by using the word *voidable* instead of *void,* as to creditors, the Vice Chancellor intended to be understood as merely saying the deed was not a *nullity,* but was good as between the parties, and for the purpose of vesting a good title in a *bona fide* purchaser without notice, before creditors had acquired a lien on the property for the payment of their debts; he but uses the word *voidable* to express what we understand to be the meaning of the first section of the act, taken in connection with the fifth section, in declaring all conveyances made to defraud creditors shall be *void.* It is supposed, however, the Vice Chancellor meant something more than this.   That, by declaring such deeds voidable only, as to creditors, he meant the title, not only as between the fraudulent parties to the deed, but also as to creditors, passed out of the fraudulent grantor, and vested in the fraudulent grantee, who could be divested of it only by the decree or judgment of a court, at the suit of creditors, declaring the deed fraudulent and void as to them.   There are, I admit, several parts of the opinion

that will bear this construction. He says, "The entire interest and estate of a fraudulent grantor, passes from him by such a conveyance; which would not be the case if it were a nullity;—while the title must vest somewhere, for the law does not permit the fee to be an abeyance. It vests by consequence, in the grantee, subject to be divested whenever the creditors or persons aggrieved think proper to call in question the validity of the transaction, and show the deed or conveyance to be fraudulent. And when this is done, the judgment or decree of the Court is interposed, and, by force of the statute, such judgment or decree declares the instrument to be void, and void *in toto*, as respects those who have impeached it, and giving to them the benefit of their legal diligence,. &c.

"Upon these principles, it appears to me impossible to consider the title to the assigned property as thrown back upon the assignor, Moffat, and as taking a new start from him, when the assignment to Hall and Swan was declared void as to the creditors who had taken measures to impeach it. The effect of the decree was only to divest the assignees of their right and control over the property by virtue of the assignment, so as to have the property applied to lawful purposes, namely, to the payment of the debts of the assignor owing to such of his creditors as did not choose to submit to his terms, but who pursued their legal remedies, and thereby acquired preferences over others, and priorities of payment out of his estate," &c.

"The practice upon a decree of requiring a release or conveyance by a person holding under a *voidable* deed, upon setting it aside, shows the understanding to be that the legal title, at least, remains in him, and does not return and revest in the original grantor. &c.

"But, supposing the title to the property to have reverted to Moffat, and that the receiver takes it as coming di-

rectly from him," &c. " Although the assignment may be void as to creditors generally, legal measures are still necessary on their part, in order to avoid it," &c.

If the title as to creditors be in the fraudulent grantee, and he can be divested of it only by a judgment or decree declaring the conveyance fraudulent and void, as to creditors, it would seem to follow, as a necessary consequence, that a creditor, by obtaining judgment and taking out execution and selling the property so fraudulently conveyed, and purchasing it himself, would not acquire a title. For, if the title as to creditors is *not*, in contemplation of law, still in the fraudulent grantor, how could a creditor, by such means, obtain a title ? And yet it has been every day's practice, and has never, to my knowledge, been questioned. *Hyslop* v. *Clark*, 14 *J. R.* 458 ; *Austin* v. *Bell*, 20 *J. R.* 442; *Jackson* v. *Roberts' executors*, 11 *Wend. R.* 422 ; *Drinkwater* v. *Drinkwater*, 4 *Mass. R.* 354 ; *Reiker* v. *Ham*, 14 *Mass. R.* 137. These cases show the deed is void against creditors ; and that they may levy upon the property and sell it to pay their debts, the same after such fraudulent conveyance as before, any time before it has been conveyed by the fraudulent grantee to a *bona fide* purchaser without notice.

Were it not for the fifth section of the act, a good title could, in no case, be made against creditors, through the fraudulent conveyance; not even in favor of a *bona fide* vendee for a valuable consideration without notice. It was so decided by the Supreme Court of Errors of the State of Connecticut, in *Preston* v. *Crofut*, 1 *Day R. N. S.* 527, *note*, on the statute of that state, which contains no provision in favor of *bona fide* purchasers. A like decision was made by Chancellor Kent, in *Roberts* v. *Anderson*, 3 *J. C. R.* 371. It is true the decision of the Chancellor in that case was afterwards reversed by the Court of Errors ;

Fox *v.* Clark.

but the only difference between the Chancellor and the Court of Errors was that, while the Chancellor held the proviso in favor of *bona fide* purchasers in their statute did *not extend to such* purchasers from a fraudulent grantee to defraud creditors, the Court of Errors held the reverse. Ch. J. Spencer, in controverting the ground taken on the argument of the case in the Court of Errors, says: " In my judgment, the error of those who assert, that a fraudulent grantee under the 13*th of Eliz.* takes no estate, because the deed is declared to be *utterly void,* consists in not correctly discriminating between a deed which is an absolute nullity, and one which is voidable only. No deed can be pronounced, in a legal sense, utterly void, which is valid as to some persons, but may be avoided, at the election of others." *Anderson* v. *Roberts,* 18 *J. R.* 527. Again he says, " I trust it has sufficiently appeared, that *the fraudulent grantee takes the entire interest of the fraudulent grantor, and that the deed is voidable, at the in-* stance of the creditor, not legally and strictly void." *P.* 531. But he does not thereby mean the estate, as against creditors, is so vested in the fraudulent grantee, that he can be divested of it only by the decree or judgment of a court. For, in another part of his opinion, he says: " I must be understood, as qualifying the right of the purchaser from the fraudulent vendee. It must be prior, in point of time, to a sale for a valuable consideration, by the fraudulent grantor; and it must, also, be prior to a sale on execution, at the suit of the creditor." *P.* 532. The Chief Justice uses the word voidable, in contradistinction to utterly void for all purposes; as the deed, if void *in toto,* could not have the effect of vesting a good title in an innocent purchaser without notice.

The case of *Anderson* v. *Roberts,* is principally relied on by the Vice Chancellor, in *Henriques* v. *Hone.*

This last case was appealed to the Chancellor, and from him to the Court of Errors, in both of which events, the decree of the Vice Chancellor was affirmed; but for a different reason from the one chiefly relied on by the Vice Chancellor. The Ch. Justice, in delivering the opinion of the Court of Errors, says, " The Chancellor confines himself, in his opinion, to the facts of the case, and says: ' The defendant, Hone, having assented to the assignment by executing the same, (his assent) it is not void as to him.' This is the true ground upon which the decision should rest, and upon this ground it cannot be controverted." *Hone* v. *Henriques,* 13 *Wend. R.* 242. Neither the Chancellor nor Court of Errors adopted the legal principles laid down by the Vice Chancellor, in affirming the decree.

In *Austin* v. *Bell,* where a debtor had made an assignment for the benefit of creditors, which was void as to them, in consequence of its containing objectionable features, it was held, a judgment creditor, who had not given his assent to the assignment, might take out execution, and levy on the property in possession of the assignee, and sell it in satisfaction of his debt. That case is like the one before the Court, with this exception; complainants, instead of taking out execution and levying on the property assigned by Clark to Dallee, and selling it, took a mortgage from Clark on a part of the property assigned, for the payment of their judgment.

If property fraudulently conveyed may be taken and sold on execution, by a creditor, why may he not take a mortgage on the same property from his debtor, for the security of his debt? It seems difficult to assign a reason why he should not. Why drive him to a judgment and execution? Why not allow the fraudulent debtor to repent, and, so far as in his power, to retrace his steps?

Fox *v*. Clark.

Why render the title of the fraudulent grantee more secure, by fortifying it against the assaults of creditors, unless they are made from a particular quarter? With a mortgage from a fraudulent grantor, the creditor is in as good a position to test the validity of an assignment, with a fraudulent grantee, as he would be with a judgment and execution levied on the same property.

It is said it will enable fraudulent grantors to give a preference among creditors, after a suit has been commenced to test the validity of an assignment. This is true; but a debtor has a right to prefer one creditor to another, any time before the latter has obtained a lien on the debtor's property for his debt. It not unfrequently occurs, a creditor who has prosecuted for his debt, when on the point of obtaining judgment, is met with an assignment giving other creditors a preference over him. There is no such ground for complaint in the present case. The mortgage from Clark to complainants was executed on August 20th, 1839; and the Willises did not file their bill until October, 1840. In March, 1842, they obtained a decree, declaring the assignment null and void, and appointing a receiver; who sold the mortgaged premises at public auction, to the Willises, on the 2d of August, 1842. The receiver, and the Willises, as purchasers from him, took the premises subject to the mortgage. There must be a reference to a Master to ascertain the amount due on the mortgage, and, on the coming in of his report, the usual decree must be entered.