# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF NORFOLK, OCTOBER TERM 1854,
## AT DEDHAM.

---

#### PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW, ⎫
Hon. BENJAMIN F. THOMAS, ⎬ Justices.
Hon. PLINY MERRICK, ⎭

---

## Moses C. Beal *vs.* Simeon Warren & another.

A voluntary conveyance of land, not affecting creditors, made in good faith, and duly recorded, is good against a subsequent purchaser for valuable consideration.

A conveyance by a married woman, in which her husband does not join, of property held by her to her separate use under *St.* 1845, *c.* 208, passes a valid title, subject only to the estate by the curtesy secured to the husband by § 7 of that statute.

Action of tort for breaking and entering the plaintiff's close, and cutting and carrying away ten cords of wood. Answer, title in Azel H. Warren, one of the defendants.

At the trial in the court of common pleas, before *Hoar*, J. the plaintiff gave in evidence a deed from Simeon Warren, dated

May 21st 1851, and recorded the, next day, purporting to be made in consideration of $500 paid to the grantor, and to convey the premises to Ruth F. Quindley, (then and still a married woman,) "to have and to hold the same to her, her heirs and assigns, forever, and to her and their own use and behoof forever, and to be held by her, without the intervention of a trustee, to her sole and separate use, free from the interference or control of her husband, agreeably to the statute in such cases provided." It was admitted that the defendants could prove, if competent, that no consideration was actually paid for this deed.

The plaintiff also proved that Mrs. Quindley occupied the premises from the time of receiving this deed until the 11th of November 1851, when she made a deed thereof, (in which her husband did not join,) to the plaintiff, in consideration of $500 actually paid to her, and this deed was duly recorded, and the plaintiff took immediate possession of the premises. The defendants offered to prove that the plaintiff knew, at the time of purchasing the premises and taking this deed, that the conveyance to Mrs. Quindley was without consideration; but the judge ruled that such evidence would be immaterial.

The defendants gave in evidence a deed of the premises from Simeon Warren to Azel H. Warren, his son and co-defendant, dated February 4th 1852, and recorded the next day; and proved that the consideration thereof was $800, actually paid. The wood was cut by the defendants in the ensuing March.

The judge "instructed the jury that the deed from Simeon Warren to Mrs. Quindley, the grantor not being shown to be indebted at the time, gave a good title to the grantee, against subsequent purchasers for a valuable consideration, unless intended to defraud creditors, and impeached on that ground; and that, although the deed to the plaintiff would not convey to him the estate of Mrs. Quindley in the premises, yet that she, being in occupation of them, and having the management of them, so far as the evidence showed, with the assent of her husband, or, at least without objection or interference on his part, in connection with the possession taken by the plaintiff under it, there was

sufficient evidence of such a tenancy by the plaintiff as would enable him to maintain this action against mere wrongdoers without any title, such as the defendants were." To these instructions the defendants excepted.

" The presiding judge, upon the authority of *Beach* v. *Manchester*, 2 Cush. 72, ruled that the plaintiff's deed from Mrs. Quindley, and his possession under it, did not convey to the plaintiff a title sufficient to entitle him to recover the value of the wood cut and carried away by the defendants, but only damages for the injury to his possession." The jury returned a verdict for nominal damages. And the plaintiff excepted to this last ruling.

The arguments were had at November term 1853.

*J. J. Clarke*, for the defendants. 1. Proof that there was no consideration for the deed from Simeon Warren to Mrs. Quindley was admissible, although payment of a consideration was acknowledged in the deed. *Clapp* v. *Tirrell*, 20 Pick. 247. The *St.* of 27 Eliz. *c.* 4, is in affirmance of the common law, and has been adopted as the basis of jurisprudence on voluntary conveyances in the United States. *Kimball* v. *Hutchins*, 3 Conn. 450. *Ricker* v. *Ham*, 14 Mass. 137. By that statute, all voluntary conveyances are fraudulent and void, as against purchasers for valuable consideration, even with notice of the first conveyance. 4 Cruise Dig. tit. 32, *c.* 28, §§ 3, 21, 28, and cases cited. *Doe* v. *Rusham*, 17 Ad. & El. N. R. 723.

2. The deed of Mrs. Quindley was void, because her husband did not join in it, as required by Rev. Sts. *c.* 59, § 2. The *St.* of 1845, *c.* 208, gives her no right to convey property held to her separate use under that statute. *Beach* v. *Manchester*, 2 Cush. 74. If the general provision of § 5 that she "shall, in respect to all such property, have the same rights and powers as if she were unmarried," conferred upon her an unlimited right of disposal, there was no occasion for § 8, providing for the conveyance of such property to trustees on application to this court.

*N. C. Berry*, for the plaintiff.

THOMAS, J. Two questions are raised by, and have been argued upon these exceptions : 1st. What effect, if any, is to be

38 *

given to the deed of Simeon Warren to Mrs. Quindley? 2d,
What effect, if any, is to be given to the deed of Mrs. Quindley
to the plaintiff?

1. The deed from Simeon Warren to Mrs. Quindley was a
voluntary deed of gift, the grantor not being indebted at the
time of the grant, and no actual intent to defraud future cred-
itors being charged or shown.    The estate was subsequently
conveyed to one of the defendants, Azel H. Warren, by Simeon
Warren, for a valuable consideration.    No question is made
whether the second grantee had actual notice of the first con-
veyance, though from the relation of the parties, and from the
fact that there was no attempt to show actual fraud, such notice
may reasonably be inferred.    Nor would this be, in the absence
of fraud, material; for the registration of the conveyance would
be constructive notice, and sufficient notice, to all subsequent
purchasers.    The question is then, for the first time, to be directly
determined in this commonwealth, whether a voluntary convey-
ance, made in good faith, and not affecting creditors, is good as
against a subsequent purchaser for a valuable consideration.

In the precise form in which the proposition is stated by the
learned judge of the common pleas, there might be some diffi-
culty.    He "instructed the jury that the deed from Simeon War-
ren to Mrs. Quindley, the grantor not being indebted at the
time, gave a good title to the grantee, against subsequent pur-
chasers for a valuable consideration, unless intended to defraud
creditors, and impeached on that ground."    Of course, the learned
judge did not intend to say that it might not be impeached by
showing that it was made with the intent and purpose of de-
frauding the subsequent purchaser; for this is the specific evil
against which it was the object of the statute of 27 Eliz. *c.* 4, § 2,
as distinguished from the *St.* 13 Eliz. *c.* 5, § 2, to guard.    For
example, A. makes a voluntary gift to his son B. with a fraudu-
lent purpose to deceive C., to whom he proceeds at once to sell
and convey the same estate, for a valuable consideration.    The
first conveyance would be void, as against the second, though
the grantor was not indebted, and had no intent to defraud cred-
itors.    Indeed, it has been held by some of the courts that under

*St.* 27 Eliz. *c.* 4, the intent to defraud creditors only would not make void a voluntary gift as against a subsequent purchaser for a valuable consideration; but that the gift must be made with the specific intent of defrauding subsequent purchasers. *Foster* v. *Walton,* 5 Watts, 378. *Douglas* v. *Dunlap,* 10 Ohio, 162. *Sanger* v. *Eastwood,* 19 Wend. 514. *Bank of Alexandria* v. *Patton,* 1 Rob. (Virg.) 499. It is however otherwise settled in this state. *Ricker* v. *Ham,* 14 Mass. 137. *Clapp* v. *Leatherbee,* 18 Pick. 131.

But no evidence was offered, at the trial, of a design or purpose in Simeon Warren, by the first deed, to deceive or defraud his son, the subsequent purchaser for valuable consideration; and no question or suggestion of objection to the ruling, on this ground, was made at the argument. We are to take the instruction therefore, not as an abstract proposition, but as a practical rule applied to the facts and posture of the case.

The question arises upon the construction of the *St.* of 27 Eliz. *c.* 4, § 2, which provides "that all and every conveyance, grant, charge, &c. in or out of, any lands, &c. had or made at any time heretofore since the beginning of the Queen's majesty's reign that now is, or at any time hereafter to be had or made, for the intent and of purpose to defraud and deceive such person or persons, &c. as have purchased or shall afterwards purchase in fee simple, &c. the same lands, &c. shall be deemed and taken, only as against that person and persons, &c. and their heirs, &c. and against all and every person lawfully having or claiming by, from or under them, which have purchased or shall hereafter so purchase for money or other good consideration, the same lands, &c. to be utterly void, frustrate and of none effect; any pretence, color, feigned consideration, or expressing of any use or uses to the contrary notwithstanding." This statute is said to be in affirmance of the common law. *Cadogan* v. *Kennett,* Cowp. 434. *Hamilton* v. *Russell,* 1 Cranch, 316. 4 Kent Com (6th ed.) 463. No question is made but that the statute is in force and has been practised upon here. In the adoption of an English statute, the received construction of that statute to the time of our separation from the mother country is adopted with, and

forms, indeed, an integral part of it. *Cathcart* v. *Robinson*, 5 Pet. 280.

But, at the time of our separation from England, there was no settled construction of this statute. Certainly what may now be deemed the settled construction of the English courts was not then established. As late as 1777, Lord Mansfield said: "There is no part of the act of parliament, which affects voluntary settlements *eo nomine*, unless they are fraudulent." *Doe* v. *Routledge*, Cowp. 708. In earlier cases we find the same view of the statute expressed, by Lord Hale in *Sir Ralph Bovy's case*, Vent. 193; by Lord C. J. Wilmot in *Roe* v. *Mitton*, 2 Wils. 356; and by Lord Hardwicke in the case of *Newstead* v. *Searle*, cited by Lord Mansfield in *Doe* v. *Routledge*, Cowp. 708, 709. We may refer, also, to *Jenkins* v. *Keymis*, 1 Lev. 150; *Lavender* v. *Blakstone*, 2 Lev. 146; *Garth* v. *Mois*, 1 Keb. 486; *Jones* v. *Marsh*, Cas. temp. Talb. 64; *White* v. *Sansom*, 3 Atk. 412. The construction now adopted in England cannot be said to have been settled before the year 1807, in the leading case of *Doe* v. *Manning*, 9 East, 59. The rule, as now settled, is that voluntary conveyances are in all cases void as against subsequent *bona fide* purchasers for a valuable consideration. *Doe* v. *Manning*, 9 East, 59. 4 Cruise Dig. tit. 32, *c.* 28, § 21. *Doe* v. *Rusham*, 17 Ad. & El. N. R. 723.

As authority, the English construction does not conclude us. Still less does the reasoning upon which it is based. The ground is that the subsequent conveyance for a valuable consideration of itself proves the fraudulent intent in making the voluntary conveyance, or, in other words, that from the second conveyance the law conclusively presumes fraud in the first. It is to be observed that the *St.* of 27 Eliz. *c.* 4, has said nothing in relation to voluntary conveyances. It seeks to frustrate and render void conveyances, not because they are voluntary, but because made with the intent and purpose to deceive and defraud such person or persons as shall purchase the land for money or other good consideration. They are void, not because they are voluntary, but because they are fraudulent. This is made clear by a consideration we have not found adverted to in

the cases — that the statute applies in terms to conveyances made before its passage from the commencement of the reign. The language of the preamble is also explicit on this point. The evil was that " not only the Queen's most excellent majesty, but also divers of her highness's good and loving subjects, may have, incur and receive great loss and prejudice, by reason of fraudulent and covinous conveyances," &c. " meant and intended by the parties that so make the same, to be fraudulent and covinous, of purpose and intent to deceive such as have purchased or shall purchase the same." " For the remedy of which inconveniences, and for the avoiding of such fraudulent, feigned and covinous conveyances, &c. and for the maintenance of upright and just dealing in the purchasing of lands, &c. be it enacted," &c. The purpose and intent of the act are also quite apparent from the third section, which subjects any one, attempting to defend them, to forfeiture and imprisonment; a provision that could not be intended to apply to voluntary gifts made in good faith, by one unembarrassed in his affairs, from a sense of duty or affection.

The effect of the construction given to the statute under the English rule is this : If a man makes a voluntary conveyance from love, affection or sense of moral duty, and afterwards conveys the same estate to a third person for a valuable consideration, the mere making of the second deed shall be conclusive evidence of a fraudulent intent in making the first, no matter what the interval of time by which they are separated. The more natural conclusion would seem to be that the intent lies near the act, and that the purpose of the second conveyance was to deprive the grantee of the rights acquired under the first; and, where the second grantee had knowledge of the first conveyance, that he colluded with the grantor in effecting that purpose.

There are several objections to this construction, equally fatal. The first is, that it conclusively determines, as a question of law, what is a mixed question of law and fact. A man has a right to give away his estate. Such gift is good as against him and his heirs or devisees. It is void only as against creditors, or under that statute as against subsequent purchasers for a valuable consideration. It is void against them, only when it was made

with intent and purpose to deceive and defraud them. Whether such intent and purpose existed would seem to be a question of fact for the jury; but if it be a question of law, that is, if it be the legal inference from the facts proved, the inference cannot be made till the facts are found.

But this construction makes its inference or presumption of fraud from the mere fact of a subsequent conveyance for valuable consideration; so that, in effect, all voluntary gifts are made void as against subsequent purchasers, however reasonable and just may have been the purposes of the first conveyance, or however unreasonable and unjust the purposes of the second. It shuts the door to the inquiry whether, in fact, the conveyance, grant or charge, sought to be avoided, was made with the intent and purpose to deceive and defraud, for which reason alone the statute seeks to avoid them.

Again; it not only makes the inference or presumption of fraud from the simple act of subsequent sale; but it makes that presumption retrospective, and conclusive of the character of a previous act, however long the interval of time between the two, or however changed the condition, relations and motives of the actors. It says, because the grantor has now sold for a valuable consideration, the intent and purpose to sell for a valuable consideration must have existed in his mind some fifteen or twenty years ago, it may be when he made the voluntary gift. The statute draws no such conclusion. The common law, in whose light it is to be construed, draws no such conclusion. Such con clusion is not based upon any law of the human mind, or any experience of the modes of its operation. The most that can justly be said is, that the second conveyance has created a party capable of avoiding the first, if it was fraudulent; and that by reflection it has some tendency to show the purpose and intent of the first, greater or less as the transactions are near or distant in point of time, or are connected in fact by the other evidence in the case.

Another objection to this view of the statute is that it leaves uncertain the tenure of property. The owner of real estate has the legal right to make a voluntary gift of it; and if the gift be

made in good faith, it will conclude him and his heirs, and ought to conclude all other persons. The question whether it was made in good faith, depends upon the situation of his affairs when it was made, and the motives and purposes which led to the act. The grantor is wealthy, owes no man, gives to a child whose infirmity requires his aid a reasonable allowance out of his estate ; he conveys to him a dwelling-house or farm the inducement to the act was a sense of duty, with no ulterior purpose ; the deed is duly registered ; the party enters into open possession. Such a gift would seem to be as remote as pos sible from fraud ; but, under this rule of construction, the ques- tion whether valid or not is made to depend upon the fact whether the grantor shall at any time thereafter convey such estate for a valuable consideration. If so, the rule presumes conclusively that the gift to the child was fraudulent ; and it is avoided by the sub- sequent grantee, even if he had full knowledge of the first con- veyance. Because, says Lord Ellenborough, in *Doe* v. *James,* 16 East, 212, " it amounts only to notice of a settlement which was void against a subsequent purchaser for a valuable consid- eration ; " that is, it is a conveyance that was fraudulent. Surely, such a construction makes the statute an instrument of fraud, rather than a means of prevention.

In a recent case in the Queen's Bench, Lord Campbell thus states the doctrine : " The principle on which voluntary convey- ances have been held uniformly to be fraudulent and void as against subsequent purchasers appears to be, that, by selling the property for a valuable consideration, the seller so entirely repu- diates the former voluntary conveyance, as that it shall be taken conclusively, against him and the person to whom he conveyed, that such intention existed when he made the conveyance, and that it was made in order to defeat the purchaser." *Doe* v. *Rusham,* 17 Ad. & El. N. R. 724, 725. It is to be observed that Lord Ellenborough, in *Doe* v. *Manning,* seems to have de- cided upon the preponderance, and not the uniformity, of the authorities. Lord Campbell's statement of the doctrine, we cannot but think, puts it on ground less tenable, if possible, than that before examined. The grantor, under the statute

of 27 Eliz. has, strictly, no power to repudiate a voluntary conveyance. As against him and his heirs or devisees, and those claiming under their deed, the voluntary conveyance is valid. He gives to another a power to do what he cannot do himself. The second grantee holds as against the first, not because the grantor has repudiated his first conveyance, but because it was originally fraudulent. The second conveyance did not make the first fraudulent, but it enabled the new grantee to avoid it, because it was made with intent and purpose to defraud subsequent purchasers. And if there were this power of repudiation, it is not easy to see how the act of to-day conclusively shows a fraudulent purpose and intent in an act twenty years ago, and this not only as against the grantor, but as against the first grantee.

For these, among other reasons, we cannot accept the construction of the statute now settled in England ; we are not concluded by its authority ; we are not convinced of its soundness.

The true construction of the statute we think is, that conveyances are not avoided merely because they are voluntary, but because they are fraudulent; that a voluntary gift of real estate is valid as against subsequent purchasers and all other persons, unless it was fraudulent at the time of its execution ; that a subsequent conveyance for a valuable consideration is evidence, but by no means conclusive evidence, of fraud in the first voluntary conveyance ; and that a voluntary gift, made when the grantor is not indebted, in good faith, and without intent to defraud future creditors or subsequent purchasers, is good as against a subsequent purchaser for valuable consideration with notice. Such we understand to be the construction practically adopted in this commonwealth, and which is, to use the words of Chancellor Kent, " the better American doctrine." 4 Kent Com. (6th ed.) 463, *note. Bennett* v. *Bedford Bank,* 11 Mass. 421. *Ricker* v. *Ham,* 14 Mass. 137. *Salmon* v. *Bennett,* 1 Conn. 525. *Cathcart* v. *Robinson,* 5 Pet. 280. *Jackson* v. *Town,* 4 Cow. 603. 1 Story on Eq. § 427 *& seq.* 1 Cruise Dig. (Greenl. ed.) tit. 7, *c.* 2, § 7, *note.* 1 Amer. Lead. Cas. (3d ed.) 78.

The result is, that the instructions of the judge on this point were right, and that the exceptions to these instructions are overruled.

2. The second question raised by these exceptions is, what effect, if any, is to be given to the deed of Mrs. Quindley to the plaintiff. This question depends upon the construction to be given to the statute of 1845, *c.* 208, giving authority to married women to hold property to their separate use, without the intervention of trustees.

The deed of Simeon Warren to Mrs. Quindley was made under this statute. It was a grant of an estate to her and her heirs, in fee simple, "to be held by her, without the intervention of a trustee, to her sole and separate use, free from the interference or control of her husband, agreeably to the statute in such cases provided." Mrs. Quindley made to the plaintiff a deed of the land, her husband then living. The question is, what title or interest, if any, the plaintiff took under this deed. The effect of the deed depends upon the construction of the statute of 1845, *c.* 208. As the separate deed of a married woman, it would be at common law, or under the previous statutes of the Commonwealth, simply void.

The fifth section of this statute provides that whenever any property shall be secured to any married woman, or conveyed, devised or bequeathed to her, pursuant to the provisions of the statute, "such woman shall, in respect to all such property, have the same rights and powers, and be entitled to the same remedies in her own name, at law and in equity, and be liable to be sued at law and in equity, upon any contract by her made or any wrong by her done in respect to such property, and also upon any contract by her made or wrong by her done before her marriage, in the same manner and with the same effect as if she were unmarried ; and all such property may be attached in any such suit, and may be taken on execution, as if she held the same, being unmarried."

Section 7 provides that if any married woman, holding property to her separate use by virtue of this act, shall die intestate, all her right and interest in any personal property thus held shall

vest in the husband, unless other provision is made in relation thereto by the terms of the contracts or conveyances under which she holds; and that he shall be entitled to his estate by the curtesy in all lands and tenements held by his wife, as if this act had not been passed.

The language of the statute is broad and comprehensive, giving to a married woman, holding property by this tenure, the same rights and powers, and entitling her to the same remedies at law and in equity, in relation to such property, as if she were unmarried, conferring upon her authority to make contracts in relation to it, and making her liable to be sued at law and in equity upon such contracts, and in such suits rendering the property liable to attachment and seizure on execution. Clearly she could dispose of the property indirectly; for she could render herself liable upon contracts to its full value. And she can do it directly, if we give full force and effect to the language conferring upon her "the same rights and powers, in respect to such property, as if she held the same, being unmarried."

In the consideration of this point, our chief embarrassment has arisen from the case of *Beach* v. *Manchester*, 2 Cush. 72; not from the point decided, but from the view there expressed of the statute. In that case, the property was secured to the separate use of Mrs. Beach by an ante-nuptial contract. But after the marriage, under the provisions of the eighth section of the statute of 1845, *c.* 208, the property so secured had been conveyed by her to a trustee appointed by this court. See *Tinker* v. *Beach*, 11 Met. 349. The property was then to be held upon such trusts and to such uses as she had declared in her deed of trust. For, after such assignment to a trustee, the eighth section of the statute provides that " the rights and powers conferred upon such married woman by the fifth section of this act shall cease, and her rights, interests and powers shall depend upon the trusts and uses declared in the instrument of conveyance to the trustee, or in other lawful declaration of trust." In the deed of trust, no power was reserved to dispose of the property by will or by any testamentary paper in the nature of a will. This was of course an end of the case. The rights and powers conferred on her by

the fifth section had ceased, and her deed of trust had reserved no power to make a will. The power, if she had any, depended upon the prior statute of 1842, c. 74; and under that statute the will was not valid, because it was without the written consent of her husband. The decision then, in the case of *Beach* v. *Manchester*, was clearly right.

But the reasoning of the court in that opinion doubtless goes further; and upon that opinion the learned judge of the common pleas relied as the "authority" for his ruling. As *authority* the decision does not sustain the ruling, though some of the reasons given for the decision do. The authority of a case as a precedent is limited to the point decided. The point decided was, that the will of a married woman, made without the consent of her husband, assuming to dispose of property which had been secured to her separate use under the statute of 1845, c. 208, but which, under the eighth section of that statute, she had, after marriage, conveyed to a trustee, without reserving any power to dispose of such property by will, was not valid, and could not be admitted to probate.

Upon careful consideration of the view then taken of the statute, a majority of the court think it is not sound; but that the fifth section confers upon a married woman, holding property under the statute, the right and power of conveying such property, by deed, subject only to the limitation, contained in the seventh section, of the rights of the husband as tenant by the curtesy, or other restrictions or limitations contained in the instrument under which she holds. The result is, that the deed of Mrs. Quindley to the plaintiff conveyed to him her entire interest in the estate, that is, the fee simple, subject to the curtesy of the husband. Such being the estate taken under the deed of Mrs. Quindley, he was entitled to recover the value of the wood taken by the defendants.

*Plaintiff's exceptions sustained, and new trial ordered in this court.*