## Arza Lewis, complainant, *vs.* Smith W. Nelson *et al.*, defendants.

A deed of conveyance by husband and wife, with condition that grantee, during the natural lives of grantors, should farm the land conveyed, and pay a portion of the products to grantors, and, at their decease, convey to the surviving children, and, in default of such, to the "right heirs" of grantors; the deed not being in any way executed by the grantee, does not create an irrevocable trust, and vests no estate in such children.

The clause in such deed directing a conveyance, etc., is a mere power to convey in the event that grantor and wife should die without making other or further disposition of the land.

Appeal from Calhoun Circuit Court, in Chancery.

*Geo. Woodruff,* for Nelson, appellant.

*George C. Gibbs,* with whom was *J. V. Campbell,* for the children of D. Johnson, appellees.

This case is fully stated in the opinion of the Court.

By the Court, Bacon, J.

This is an appeal from a decree made by the Circuit Court for the County of Calhoun.

The bill states, among other things, that, on the twenty-sixth day of December, 1846, David Johnson and Betsey, his wife, conveyed by deed, certain lands to their son-in-law, David Burt, jr. The consideration expressed in the deed, is one dollar, " *and of the trusts hereinafter mentioned.*" The habendum clause of the deed, and that which follows it, are in these words: "To have and to hold, the above granted and described lands, to him the said David Burt, jr., or his

legal representatives, upon trust and confidence during the term of our natural lives, to perform the conditions following, to wit : the said David Burt, jr., covenants and agrees to and with the said David Johnson and wife, parties hereunto of the first part, to work the said premises hereinbefore described, or cause the same to be worked, fenced and kept in repair in a good and farmer-like manner, and to pay all taxes upon the premises, and to comply in every way to the comfort and support of the said parties of the first part, for the term above mentioned, by giving to them the equal undivided one-fourth part of all the productions of said farm, or the soil thereof, and to lease the house and garden on the premises, now occupied as a dwelling by the said Johnson and wife, for the term of their natural lives as above mentioned, and from and after the decease of the said Johnson and wife to be conveyed to the surviving children of said Johnson and wife, to be equally divided between them, and in default of said children, the right heirs of said Johnson and wife."

This deed was executed by Johnson and wife only, and was acknowledged and recorded.

Burt took possession of the premises under this deed, and afterwards, on the 27th January, 1849, he reconveyed them by quit claim deed, for the consideration of one hundred dollars, to Johnson, who then went into possession.

On the same day, the 27th January, 1849, Johnson and wife, for the consideration of $800, conveyed the premises by warranty deed, to George Daniels. Both these deeds were duly acknowledged and recorded.

On the 2d April, 1850, Daniels being indebted to Johnson in the sum of $1100, to secure the payment thereof, executed a mortgage on the premises, according to the terms of two promissory notes ; one of which was payable to Betsey Johnson, the other was payable to David Johnson.

It is not necessary in this place to refer to the other facts of the case.

Arza Lewis, complainant, *vs.* Smith W. Nelson *et al.*, defenpaets.

The prayer of the bill is, that a construction may be given of the deed from Johnson and wife to Burt, and that the intent of the parties may be ascertained, etc.

The decree made by the Circuit Court was, "that the deed from David Johnson and wife, dated 26th December, 1846, to David Burt, jr., created an irrevocable trust estate in said David Burt, jr.," and that Maria Barnhart (and others, naming them), "children of said David Johnson and Betsey Johnson, became vested of a legal irrevocable estate in remainder in the premises, etc., etc."

It is to be remarked in the outset, that the deed of the 26th December, 1846, was not executed by Burt, though all its covenants and conditions are on his part, and to be kept and performed by him. Nor is the word "heirs" found in the deed, except in connection with Johnson, and is then inserted to point to whom Burt should, in a certain contingency, convey the premises.

It may, also, be further remarked in this place, that there is no evidence whatever that Burt agreed to perform any of the conditions of the deed, further than what may be inferred from the fact of his entering into possession of the farm and working it.

There is no proof whatever that any consideration passed between the parties, except, that the deed purports to be in consideration of one dollar. Nor does it appear that the children of Johnson, who now claim that they are *cestui que trusts*, were ever consulted in the matter, or that they had any knowledge of the deed or its provisions. It seems to have been a transaction solely between Johnson and wife on one part, and Burt on the other.

It is now claimed that the children of Burt acquired a right under the provisions of this deed, which could not be defeated by any act of Johnson or Burt. That the deed created an irrevocable trust, and that by the deed of 27th January, 1849, from Burt to Johnson, by which the premises

were reconveyed, the latter acquired nothing but the personal interest which Burt then had.

The children of Johnson, who are made defendants to the suit, further claim, that the deed from Johnson and wife to George Daniels conveyed nothing but the life estate of the grantors in the premises.

Let us now see what the rights of the parties to the deed of 26th December, 1846, were, and whether by that instrument they effectually cut themselves off from the right to make any alterations or changes, or to wholly undo what they had done, in regard to the premises conveyed.

There has been a series of decisions in England, extending back for ages, to the effect, that voluntary conveyances, without any valuable consideration, were void against a subsequent purchaser for a valuable consideration.

We quote a few only of these cases. In Chapman *vs.* Emory (*Cowp.*, 279), it was held that a voluntary conveyance, making a settlement to the use of the wife of the settlor, was void, as against a subsequent mortgagee, who *had notice of the settlement.* In other words, such a settlement could be controlled and defeated by the subsequent acts of the settlor.

In Wallwyn *vs.* Coutts (3 *Merivale*, 707), a debtor conveyed lands to a trustee, upon the trust and condition to pay certain creditors who were named in the deed. To this deed no creditor was made a party, nor was it made by agreement with any creditor. Afterwards, the debtor executed other deeds, varying the trusts of the first deed. Wallwyn, a creditor, then filed a bill to have his debt declared a lien on the estate. The Chancellor dismissed the bill, on the ground that the trust being voluntary, could be varied as the debtor pleased.

In Acton *vs.* Woodgate (2 *Mylne & Keene*), a trust deed was made providing for the payment of debts. It was held

80

by the Master of the Rolls, that the deed operated as a mere power to the trustee to pay debts, and could be revoked by the grantor.

In Bill *vs.* Cureton (2 *Mylne & Keene*, 503), a debtor had conveyed his property to a third person, in trust that he should sell and dispose of the same, and from the proceeds pay the creditors of the grantor. It was held by the Master of the Rolls, that the creditors did not thereby become *cestui que trusts*, and were not entitled to have the trusts executed.

In the case of Doe, *ex dem.* Ottley *vs.* Manning (9 *East R.*, 59), lands were conveyed to certain persons, to the use of Owen Manning for life, remainder to the use of the trustees, during the life of Manning, in trust to preserve contingent remainders ; remainder to the use of Catharine Manning for life ; remainder to the trustees and their heirs upon *trust*, etc., to receive rents, etc. Afterwards, Manning, one of the parties to this deed, conveyed the premises in fee to Ottley, in consideration of £1800. After the death of John Manning, the plaintiff, Catharine Manning, brought ejectment for the premises, and the question was, whether the deed from Manning to Ottley, having been made for a valuable consideration, should prevail over the prior deed, which provided, among other things, for the settlement of the plaintiff, Catharine Manning.

The Court held the former deed to be void as against the subsequent purchaser, for a valuable considelation.

In that case, Lord Ellenborough reviewed all the former cases, and from his opinion we extract the following remarks and references to cases.

In Colville *vs.* Parker (*Cro. Jac.*, 158), it was adjudged that an assignment of a lease of lands by one *quasi*, in jointure to his wife, he taking the profits, and afterwards selling it without notice, was within the statute, though not made in trust to be revoked, nor with any clause of revocation, and was fraudulent and void.

In Prodgers vs. Langham (1 Sid., 133), a conveyance made by a man in trust for his daughter till marriage, for her maintenance, and then in trust to raise a portion for her, was held to be a voluntary conveyance, and void by the statute of 27th Elizabeth, against purchaser for valuable consideration.

In Townsend vs. Windham (2 Ves., 10), it is said : "On the 27 Eliz., every voluntary conveyance made, where after-wards there is a subsequent conveyance made for valuable consideration, though no fraud in that voluntary conveyance, nor the person making it, at all indebted ; yet the determinations are, that such mere voluntary conveyance is void at law, by the subsequent purchase for valuable consideration."

In Goodright vs. Morse (2 W. Black. R., 1019), it was held, "that the deed in question was only a voluntary conveyance, within the true meaning of the statute 27 Eliz., being founded only on a good, and not on a valuable consideration, and, therefore, could not be set up against a bona fide purchaser."

The cases are summed up with this remark: "That it cannot now be held that a prior voluntary conveyance shall defeat a conveyance to a purchaser for a valuable consideration, without overturning the settled and decided law."

All the above decisions are founded on the statute 27 Eliz.

Now, let us turn to some leading American cases, to which we are referred, and see what the decisions have been.

In Sterry vs. Arden (1 John. Ch. R., 261), and where the decision of the Chancellor was afterwards affirmed in the Court of Errors (12 John. R., 536), the facts were these : In the year 1804, James Arden conveyed certain premises to Trustees, in trust for the benefit of his daughter, who afterwards married the plaintiff, Robert Sterry. In the year 1809, Arden conveyed by deed the same premises in fee to Phillip Verplank, for a valuable consideration. Upon

these facts, the daughter and her husband filed a bill to obtain the benefit of the deed made to the Trustees for her benefit. The Chancellor, in this case, held that the conveyance by Arden to the Trustees, for the use of the daughter, being voluntary, would have been void, as against Verplank, the subsequent purchaser for a valuable consideration, had not the marriage of the daughter intervened before the purchase by Verplank, and thus gave a new character to the first deed. The principle, however, which prevails in England is fully adopted by the Chancellor, and the decree was afterwards affirmed in the Court of Errors.

In Acker *vs.* Phœnix (4 *Paige Ch. R.*, 305), a voluntary conveyance was made for the benefit of creditors, who filed a bill to enforce it. The Chancellor says: "The Court of Chancery will not aid a party who is seeking the specific performance of a mere voluntary agreement, which is neither founded on a good or a valuable consideration."

In Minturn *vs.* Seymour (4 *John. Ch. R.*, 498), a bill was filed to enforce a voluntary agreement. The Chancellor says: "The language of the books, from the earliest to the latest cases, is uniform in support of the doctrine that a voluntary defective conveyance, which cannot operate at law, is not helped in equity, in favor of a volunteer, where there is no consideration, as payment of debts or making provision for a wife or child."

The same doctrine prevails in Massachusetts, as appears in Ricker *vs.* Ham (14 *Mass.*, 137). The facts were these: In January, 1810, Gowen conveyed certain land to the plaintiff, with intent to defraud his creditors. The deed was without any consideration. Afterwards, in the year 1812, Gowen conveyed the same lands, by deed, to the defendant, for the sum of ninety dollars. The Court held, that the second deed was valid, and conveyed the land to Ham, the defendant, notwithstanding that he had notice of the former conveyance. See also 20 Pick., 247, Clapp *vs.* Tirrell.

It is not necessary for us to say, whether the English doctrine of voluntary conveyances, as it now rests, in all its extent, is the law of this State. Since the decision of this Court, in Fox *et al.* vs. Willis *et al.* (1 *Mich.* [*Manning*], 321), opinion of Whipple, J., (*pp.* 335, 336, 337), it perhaps may be doubted whether we have not, to some extent at least, rejected the rule, as now held in England ; nor do we make any decision on that point. We have examined the above cases, because they were read on the argument or referred to in the briefs, and they show how voluntary settlements and trusts have been dealt with in that country and our own ; and that, even were the grounds which are taken by the defendants the only ones on which their case rests, it is by no means certain but that it was competent for Johnson and Burt to undo what they had done, by the deed of the 26th December, 1846.

We place the decision of the case, however, on another and different ground. We are of the opinion, that the intention of the parties, as gathered from the deed itself, is clear and unmistakable. It is manifest that all which the parties intended to do, and all which they supposed they had done, was to provide for the support and maintenance of Johnson and his wife during life, and that, after their death, the land should descend to their heirs, the same as if no deed had been made.

The first and important provisions of the deed are, that Burt shall work the land, keep the fences in repair, pay the taxes, and lease to Johnson and wife the dwelling house and garden, and give to them one-fourth of the produce of the farm. So far the deed is strictly a lease, with conditions, and nothing more. Both parties were to receive the mutual benefit of the contract. Burt, who was to do the labor and pay the taxes, was to have three-fourths of all which the farm should yield, and Johnson was to receive the remaining one-fourth, and have the privilege of occupying the house and

garden. In all this, the relation of Trustee and *cestui que trust*, no more existed than it does in every case of lessor and lessee. The parties merely took this method of doing what they would have done by a lease, containing like provisions, in the usual form ; unless there be this difference, that a lease is usually executed by both parties. This deed, however, is executed by Johnson and his wife only. For some cause, not explained to us, Burt never executed it.

Much stress, however, is placed by the defendants on the clause, " and after the decease of said Johnson and wife, to be conveyed to the surviving children of said Johnson and wife, to be equally divided between them, and in default of said children, the right heirs of said Johnson and wife."

We regard this as a mere power to convey. It was contemplated by the parties, and such too, we have no doubt, was their intention, that, in the event of the death of Johnson, without making other and further disposition of the land, then Burt was authorized to convey it by deed to certain persons—and here is an important inquiry : to whom was Burt authorized to convey the land after the death of Johnson and his wife? The provision of the deed is : *first*, to convey to their *surviving children*—not to the representatives of the deceased children, if there were, or if there should be any, but to the "*surviving children ;*" and, in the *second* place, if there should be no child or children living, or to use the language of the deed, "*in default of said children, the right heirs of said Johnson.*"

Now, it appears from the bill, that both parents and children are yet living, and it may by no means be an improbable thing, nor in any way contrary to the common course of nature, that Johnson and his wife may not only survive their children, but may also die without heirs, and the land thus escheat to the State.

How, then, can the children of Johnson, during his life, claim to be *cestui que trusts*, and fasten upon the estate before

that contingency has happened, which is expressly mentioned in the deed. How, then, can the decree of the Circuit Court be sustained, which declares that, "the children of Johnson became vested of a legal irrevocable estate in remainder in the said premises."

It would be in much better taste for the defendants, who thus seek to invest themselves with the character of *cestui que trusts*, to defer their pretended claims until the common lot which awaits the whole race, shall determine whether they are to be the heirs of David Johnson. The maxim of the law being—*nemo est heres viventis*. Had there been no reconveyance from Burt to Johnson, it is by no means certain that these defendants, or any of them, would have taken any portion of the land, by means of the power given to Burt, as this would have depended on the fact that they survived their parents.

The intention of the parties to the deed, and the construction which they put upon it, are shown beyond the probability of mistake from this, that on the 27th January, 1849, Burt conveyed by deed the premises to David Johnson, thus undoing what they had done about two years before. They did not for a moment suppose that an irrevocable trust was created by their former deed. They treated it as a mere agreement, which could be terminated at any time by mutual agreement.

The decree of the Circuit Court must be reversed.

Present and concurring, BACON, GREEN, MARTIN, and DOUGLASS, J. J.